UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| MICHAEL O. BROWN, | ) | |
|---|---|---|
| | ) | Case Nos. 4:13-cr-11; 4:18-cv-60 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Susan K. Lee |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *Respondent*. | ) | |

**MEMORANDUM OPINION**

Before the Court is Petitioner Michael O. Brown's motion to reconsider the denial of his § 2255 motion (Doc. 23 in Case No. 4:18-cv-60). Petitioner's motion for reconsideration is **GRANTED**. For the following reasons, however, Petitioner's § 2255 motion (Doc. 1 in Case No. 4:18-cv-60; Doc. 765 in Case No. 4:13-cr-11) is **DENIED**.

**I. BACKGROUND**

On May 29, 2013, Petitioner was charged with conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine and 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (count one), and two counts of distribution of cocaine base, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C) (counts nineteen and twenty). Prior to trial, the prosecution moved to dismiss count nineteen, one of the § 841(b)(1)(C) violations, and the trial court granted its motion to dismiss. (*See* Doc. 558.)

At trial, Petitioner's co-conspirators testified against him, including defendant Fontaine Hadley, and the prosecution played recorded phone calls obtained through a wiretap during which Petitioner discussed purchasing powder cocaine. (*Id*. at 5.) Hadley testified that

Petitioner distributed cocaine and cocaine base to lower-level sellers, who paid Petitioner back for the drugs after they sold them. (*Id.*) The jury ultimately convicted Petitioner of both counts one and twenty. (*See* Docs. 576, 628.) Because the Government noticed Petitioner's three prior drug felony convictions pursuant to 21 U.S.C. § 851, he was subject to the enhanced mandatory-minimum penalties in § 841(b)(1)(A). District Judge Harry S. Mattice, Jr., sentenced Petitioner to life in prison for the §§ 846 and 841(b)(1)(A) violation and 360 months on the § 841(b)(1)(C) violation, to be served concurrently. (Doc. 634.)

Petitioner directly appealed his conviction and sentence to the Sixth Circuit, which affirmed the trial court's judgment and sentence. (Doc. 681.) His subsequent petition for certiorari to the United States Supreme Court was denied. (Doc. 723.) On October 1, 2018, Petitioner filed the instant motion for relief pursuant to 28 U.S.C. § 2255.

## II. TIMELINESS

Section 2255(f) places a one-year statute of limitations on all petitions for collateral relief under § 2255 running from: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

Petitioner contends in his motion to reconsider that the Court miscalculated the date his judgment became final, and he is correct. "Finality attaches when this Court affirms a conviction

on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). The Supreme Court denied Petitioner's petition for a writ of certiorari on October 5, 2017. (Doc. 723 in Case No. 4:13-cr-11.) Therefore, this motion was timely filed on October 1, 2018. (Doc. 1 in Case No. 4:18-cv-60). The Court will therefore **GRANT** Petitioner's motion for reconsideration and evaluate his § 2255 motion on the merits.

### III. STANDARD OF LAW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). The petitioner "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Additionally, to collaterally attack his conviction based on ineffective assistance of counsel, Petitioner must establish "that [his] lawyers performed well below the norm of competence in the profession and that this failing prejudiced [his] case." *Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The prejudice inquiry requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Rodriguez-Penton v. United States*, 905 F. 3d 481, 487 (6th Cir. 2018) (quoting *Strickland*, 466 U.S. at 694). "[T]he inability [of the petitioner] to prove either of the prongs—regardless of which one—relieves the reviewing court of any duty to consider the other." *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) (en banc).

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Therefore, the court should resist "the temptation to rely on hindsight . . . in the context of ineffective assistance claims." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

"A claim that could have been raised on direct appeal is generally not reviewable in a section 2255 motion." *Duval v. United States*, 372 F. Supp. 3d 544, 549–50 (E.D. Mich. 2019) (citing *Bousley v. United* States, 523 U.S. 614, 621 (1998)). But claims of ineffective assistance of counsel are properly before the court in a § 2255 motion, and these claims may permit the Court to evaluate claims that would otherwise be considered procedurally defaulted. *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). Because Petitioner has alleged that his counsel was constitutionally deficient for either (1) failing to object to the alleged improprieties or (2) failing to raise the issues on appeal, the Court will address each of Petitioner's contentions in turn.

## IV. ANALYSIS

As far as the Court can discern, Petitioner appears to argue that: (1) his indictment was defective because Sheriff Pitts was called to testify and allowed to participate in his prosecution; (2) he was tried for crimes for which he was not indicted; (3) the trial court erred, and the prosecutor committed misconduct, in dismissing count nineteen of the indictment prior to voir dire; (4) the prosecutor engaged in selective prosecution by offering a less-favorable plea deal to Petitioner than those extended to his co-conspirators; (5) the prosecutor failed to correct knowingly perjured testimony; (6) the prosecutor committed *Brady* violations by not disclosing the educational background of Fontaine Hadley, a trial witness, and the toxicology report from Petitioner's prior state conviction; (7) the prosecutor used a non-qualifying offense in Petitioner's § 851 Notice; and, finally, (8) Petitioner's attorney was constitutionally ineffective for failing to object to the presentation of evidence used to establish the drug amounts during sentencing and on appeal, as well as for either failing to object to, or raise on appeal, all of the above improprieties.

### A. Prosecutorial Misconduct

Petitioner contends that the prosecutor engaged in misconduct by allowing Lincoln County Sheriff to "participate in the prosecution" of defendant. According to Petitioner, Sheriff Pitts was allegedly biased against him because he filed misconduct complaints against him. (Doc. 769 in Case No. 4:13-cr-11.) In reviewing claims of prosecutorial misconduct, the court first determines whether the conduct was improper, and, if so, whether the conduct was sufficiently flagrant to warrant reversal. *United States v. Tarwater*, 308 F.3d 494, 501 (6th Cir. 2002). The misconduct must be viewed in the context of the entire trial. *Slagle v. Bagley*, 457 F.3d 501, 515 (6th Cir. 2006).

5

Case 4:18-cv-00060-TRM-SKL   Document 24   Filed 11/12/21   Page 5 of 17   PageID #: 243

Petitioner alleges that Lincoln County Sheriff Pitts should not have been permitted to attend the proffer sessions of Petitioner's co-defendants. However, Sheriff Pitts's presence at the proffer sessions was disclosed to Petitioner, and he did not testify before the grand jury or the trial. It is unclear how Sheriff Pitts's involvement prejudiced Petitioner, as the government disclosed his involvement and Petitioner's counsel was able to cross-examine Petitioner's co-defendants about his involvement. As a result, there is nothing in the record suggesting that the prosecutor committed misconduct "tantamount to a due process violation." *Washington v. Hofbauer*, 228 F.3d 689, 709 (6th Cir. 2000). Accordingly, Petitioner's motion is denied as to alleged prosecutorial misconduct in permitting Sheriff Pitts to be involved in Petitioner's prosecution.

### B. Infirmities in the Indictment

Petitioner next asserts that the prosecution's decision to dismiss count nineteen of the indictment prior to trial violated his Fifth Amendment right to be tried only for crimes for which a grand jury returned an indictment. Prior to trial, "the government may, with leave of court, dismiss an indictment." Fed. R. Crim. P. 48(a). The "prosecution's failure to prosecute certain counts of an indictment does not affect the validity of the indictment as to the other counts." *United States v. Miller*, 471 U.S. 130, 136 (1985) (citing *Dealy v. United States*, 152 U.S. 539, 542 (1894)). Dismissal of a count "leaves the prosecution just as though no such count had ever been inserted in the indictment." *Dealy*, 152 U.S. at 542. Accordingly, the Court finds that the prosecution's decision to dismiss count nineteen prior to trial did not constitute prosecutorial misconduct. (*See* Doc. 769 in Case No. 4:13-cr-11.) Additionally, "convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment." *Miller*, 471 U.S. at 136. Consequently, proceeding to trial on

count one—which was based on evidence that Petitioner alleges overlapped with count nineteen—did not constitute a deprivation of Petitioner's Fifth Amendment grand jury right.[1]

Petitioner asserts that his appellate counsel was ineffective for failing to raise Petitioner's objections regarding the indictment on appeal. "Notably, appellate counsel has no obligation to raise every possible claim and the decision of which among the possible claims to pursue on appeal is ordinarily entrusted to counsel's professional judgment." *Sullivan v. United States*, 587 F. App'x 935, 942 (6th Cir. 2014) (citing *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004)). Indeed, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Id*. (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)). "To overcome the presumption of effectiveness, the ignored claim must have been clearly stronger than all of those other claims that were actually presented." *Id*. at 945.

Petitioner's appellate counsel raised several issues on appeal: (1) the wiretap evidence should have been suppressed because Petitioner was not named in the wiretap application, (2) the government did not properly comply with § 851, because it amended the notice multiple times, (3) the jury was misled by the confidential informant's inadmissible testimony, and (4) a due process collateral attack on Petitioner's state convictions. (*See* Doc. 681 in Case No. 4:13-cr-

---

[1] Furthermore, the jury only rendered verdicts on counts charged in the indictment. (*See* Docs. 15, 576 in Case No. 4:13-cr-11.) The dismissal of count nineteen did not affect the propriety of the other counts charged in the indictment. Therefore, Petitioner's contention that his conviction deprived him of his Fifth Amendment rights on this ground is meritless. *See United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995) ("The trial court has little discretion in considering a government motion to dismiss made pursuant to Federal Rule of Criminal Procedure 48(a)."). "The principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 30 n.15 (1977). Consequently, this Court cannot find an error of constitutional magnitude in the Court's dismissal of count nineteen.

11.) In this instance, the Court cannot conclude that Petitioner's argument regarding the deficiencies in his indictment is stronger than any, let alone all, of the above arguments. Accordingly, Petitioner's motion is denied to the extent it seeks relief for alleged infirmities in the grand jury and indictment process. His ineffective-assistance-of-appellate-counsel claim based on these alleged errors is also denied.

### C. Selective Prosecution

Petitioner contends that the government's decision to offer his co-conspirators, who had similar criminal histories to Petitioner, more favorable pleas than those extended to him constituted selective prosecution. "The Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). "In the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Id*. (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)). Nonetheless, prosecutors are subject to "constitutional constraints," namely the "equal protection component of the Due Process Clause of the Fifth Amendment." *Id*. Selective prosecution applies equally to the plea context. *See United States v. Redondo-Lemos*, 955 F.2d 1296, 1300–01 (9th Cir. 1992), *overruled on other grounds by United States v. Armstrong*, 48 F.3d 1308 (9th Cir. 1995), *rev'd* 517 U.S. 456 (1996). But a defendant has "no right to be offered a plea . . . nor a federal right that the judge accept it." *Missouri v. Frye*, 566 U.S. 134, 147 (2012).

To succeed on a selective-prosecution claim, an individual must offer clear evidence that that the prosecutor was motivated by a discriminatory purpose and that this purpose produced a discriminatory effect. *Armstrong*, 517 U.S. at 464. To show purpose, the Petitioner must prove that "the decisionmakers in *his* case acted with discriminatory purpose." *United States v.*

*Merriweather*, 728 F. App'x 498, 508 (6th Cir. 2018) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)). For the effect prong, "a defendant must show that similarly situated individuals . . . were not prosecuted." *Id*. A motion for selective prosecution "must" be raised prior to trial "if the basis for the motion is reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(3).

In this case, Petitioner has identified no discriminatory purpose on the prosecutor's part. Rather, he alleges that he should have been offered the same deals that his co-conspirators. (Doc. 765 in Case No. 4:13-cr-11, at 10.) However, prosecutors have broad discretion in the charging and plea-bargaining process. *See Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) (pleas are acceptable where they "no more than openly present the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution"). Therefore, Petitioner has not alleged an actionable selective-prosecution claim based on the prosecutor's failure to offer him the same plea deal as his co-conspirators, and his motion is denied to the extent it seeks relief for selective prosecution.

Petitioner further contends that his counsel rendered ineffective assistance by failing to object to the plea agreement prior to trial. The Court need not reach the question of whether counsel's failure to raise a selective prosecution claim was unreasonable as Petitioner was not prejudiced by the failure. Petitioner's selective prosecution claim is meritless, as he has no right to a plea agreement. *See Frye*, 566 U.S. at 147. Additionally, Petitioner has not alleged a constitutional violation, as he states that he was discriminated against because of "his prior criminal record." (Doc. 769 in Case No. 4:13-cr-11.) As a result, even if defense counsel had raised a selective prosecution claim, there is not a reasonable probability that the outcome of the proceedings would have been different. Accordingly, Petitioner's ineffective-assistance-of-

9

counsel claim as it relates to his allegation of selective prosecution is denied. *Strickland*, 466 U.S. at 694.

**D.** ***Brady*** **Violations**

Petitioner also alleges that the prosecutor withheld *Brady* evidence by failing to disclose Fontaine Hadley's educational background (which, Petitioner alleges, was known to the prosecutor after Hadley's Presentence Investigation Report ("PSR") was conducted) to the defense. Petitioner argues this evidence undermined the narrative that Hadley had known Petitioner all his life, because Hadley, contrary to his trial testimony, had grown up in another city.[2] (Doc. 765 in Case No. 4:13-cr-11, at 17.)

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "To establish a violation of *Brady*, [Petitioner] has the burden of establishing that the prosecutor suppressed evidence; that such evidence was favorable to the defense; and that the suppressed evidence was material." *Gillard v. Mitchell*, 445 F.3d 883, 894 (6th Cir. 2006) (citing *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000)). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*. (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

The Court need not determine whether the evidence was suppressed or favorable, because it is not material. Hadley's testimony provided only part of the evidence marshaled against

---

[2] Hadley's PSR indicates he was, indeed, a lifelong resident of Fayetteville, Petitioner's hometown. (Doc. 341 in Case No. 4:13-cr-11, at 10.)

Petitioner at trial. Two other co-conspirators testified at trial against Petitioner, and law enforcement had monitored and conducted controlled buys from him. (Doc. 613 in Case No. 4:13-cr-11, at 4-5.) Additionally, the government introduced wiretap recordings that implicated Petitioner. (Doc. 10 in Case No. 4:18-cv-60, at 3.) While Hadley was the purported head of the conspiracy, he was not the sole witness who implicated Petitioner in the scheme, nor was his testimony the only evidence offered against Petitioner. As a result, Hadley's educational background, had it been disclosed, would have been unlikely to change the outcome of the proceeding. Accordingly, the evidence is not material, and the Court denies Petitioner's motion as it pertains to the alleged suppression of Hadley's educational background.

Petitioner also claims that the prosecutor violated *Brady* by failing to disclose the toxicology report from a previous Rutherford County conviction, which was used as a predicate offense for his § 851 enhancement. The Government notes in its response to Petitioner's motion that it did not have the lab report in its custody, a requirement for a *Brady* violation. (Doc. 10 in Case No. 4:18-cv-60, at 13); *see* 373 U.S. at 87. However, even if the lab report were suppressed, it, too, is not material. Petitioner had three prior felony convictions that were noticed. (Doc. 628 in Case No. 4:13-cr-11.) Consequently, even if the lab report had been disclosed and the conviction not been used in the § 851 enhancement, Petitioner would still have been subject to the same enhanced mandatory-minimum penalty of life in prison. *See* 21 U.S.C. § 841(b)(1)(A) (2010). As a result, the Court cannot conclude that the result of the proceeding would have been different even if the evidence had been disclosed. Accordingly, the Court denies Petitioner's motion as it pertains to both alleged *Brady* violations.

Petitioner also alleges ineffective assistance of counsel, but this claim also fails. Petitioner's trial counsel did request *Brady* materials, and a motion for *Brady* materials was

briefed before the trial court. (Docs. 600, 605 in Case No. 4:13-cr-11.) The trial court subsequently denied the motion. (Doc. 618 in Case No. 4:13-cr-11.) Nonetheless, even if the Court assumes that Petitioner's counsel's conduct fell below an objective level of reasonableness, Petitioner has not demonstrated prejudice. Even if defense counsel had objected and alleged prosecutorial misconduct, Petitioner has not demonstrated that the outcome of the proceedings would have changed, as the evidence presented at trial against Petitioner was more than sufficient for a reasonable jury to find him guilty of the crimes charged.

E. **Perjured Testimony**

Petitioner next argues the prosecutor elicited testimony from Fontaine Hadley regarding his residence history that she knew or should have known was false and misleading. (Doc. 1 in 4:18-cv-60, at 14.) The materiality standard for perjured-testimony claims is less stringent than in the *Brady* context: courts only ask "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Rosencrantz v. Lafler*, 568 F.3d 577, 584, 587 (6th Cir. 2009) (citing *Agurs*, 427 U.S. at 104). "To prove that the prosecutor's failure to correct false testimony violated due process rights, a petitioner must demonstrate that: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Rosencrantz*, 568 F.3d at 583; *see also Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019) (Petitioner "must prove that the Government's testimony was indisputably false" (internal citations omitted)). "Courts may excuse *Brady/Giglio* violations involving known and materially false statements as harmless error." *Rosencrantz,* 568 F.3d at 584. "In order to obtain a hearing under § 2255, a petitioner must make a more substantial showing than merely charging perjury and making the unsupported claim that perjured testimony was knowingly used by the prosecuting authorities. Nor does he meet the burden upon him by pointing out trivial

inconsistencies or conflicts in the evidence." *Lauer v. United States*, 320 F.2d 187, 188–89 (7th Cir. 1963).

In this case, Petitioner has not offered more than naked assertions of perjury. Indeed, it is difficult, if not impossible, to infer that the prosecution knew or should have known that Hadley was offering purportedly false testimony. Hadley's PSR states that he "is a lifelong resident of Fayetteville, Tennessee." (Doc. 341 in Case No. 4:13-cr-11, at 10.) Furthermore, while Hadley's statement would go to his credibility as a witness, the Court does not find it likely that Hadley's childhood residence convinced the jury to convict, nor does the Court find that, in the testimony's absence, the jury would have reached a different verdict. While the evidentiary threshold to warrant an evidentiary hearing is low, a hearing is not required if "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). Petitioner's assertion of perjury is contradicted by Hadley's PSR and is highly conclusory, as he offers no additional evidence that Hadley did, in fact, not live in Fayetteville his entire life. As a result, Petitioner's motion is denied as to his allegations of the presentation of false testimony.

Petitioner also alleges ineffective assistance regarding counsel's "failure to conduct a proper investigation before trial." (Doc. 769 in Case No. 4:13-cr-11, at 12.) Counsel should have, Petitioner argues, discovered that Fontaine Hadley was lying about his residential history and objected to his testimony at trial. (*Id*.) However, Petitioner has, again, failed to demonstrate prejudice. Even assuming that the supposedly-perjured testimony was material and should have been excluded, the other evidence against Petitioner was substantial. Two other co-conspirators testified against him, and the prosecution presented evidence of both controlled buys and

recorded phone calls in which Petitioner was heard discussing buying cocaine. Consequently, the Court cannot conclude that the testimony had "a substantial an injurious effect or influence on the jury's verdict." *Gilday v. Callahan*, 59 F.3d 257, 268 (2d Cir. 1995) (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)) (favorably cited in *Rosencrantz*, 568 F.3d at 584–85).

### F. Ineffective Assistance at Sentencing

Petitioner also contends that his counsel was ineffective for failing to object to the use of the testimony of his co-defendants in establishing the drug amounts for which he was held responsible at sentencing. He further contends that his counsel should have raised the issue on appeal. However, Petitioner's counsel raised his objection at his sentencing, and it was subsequently overruled by the Court. (Doc. 648 in Case No. 4:13-cr-11, at 14–18.) "A district court may estimate the amount of drugs for which a defendant is responsible, as long as a preponderance of evidence supports the estimate." *United States v. Pamatmat*, 756 F. App'x 537, 549 (6th Cir. 2018). In Petitioner's case, the Court relied on the estimate in the PSR—853.4 grams of cocaine base—which, in turn, was formed after review of the trial evidence. (Doc. 613, at 5.) Additionally, the PSR excluded powder cocaine amounts from the drug quantity to prevent double counting. (*Id*.) The Court cannot conclude that Petitioner's argument regarding the quantity of drugs attributed to him was stronger than his other appellate arguments. *Sullivan v. United States*, 587 F. App'x 935, 945 (6th Cir. 2014). Additionally, as the government points out, Petitioner's offense level was based on the career-offender range, rather than any drug particular drug quantity. Accordingly, Petitioner's ineffective assistance claim regarding drug amounts is denied.

Regarding his previous Lincoln County conviction, which Petitioner contends was for "synthetic" cocaine and, as such, not a qualifying offense for an § 851 enhancement, Petitioner

cannot show prejudice. The 2013 version of § 841(b)(1)(A) required a mandatory minimum of life imprisonment upon the noticing of two, not three, prior drug felony convictions. 21 U.S.C. § 841(b)(1)(A). As a result, even if the conviction for "synthetic" cocaine were removed, Petitioner still would have received a sentence of life in prison. Accordingly, even if counsel's failure to object to the sentence fell below an objective standard of reasonableness, Petitioner has not demonstrated prejudice stemming from his counsel's failure.

Petitioner also alleges his appellate counsel was ineffective for failing to collaterally attack his illegal state court sentences and his subsequent federal sentence, which relied upon prior state convictions in designating Petitioner a career offender. A "presumption of validity that attach[es] at the time of sentencing is conclusive" if a petitioner "failed to pursue [a collateral attack] while [it was] available" or if he or she "did so unsuccessfully." *Daniels v. United States*, 532 U.S 374, 382 (2001). Furthermore, as the Sixth Circuit noted in affirming Petitioner's conviction and sentence, a defendant cannot collaterally attack a state conviction during sentencing or on appeal unless he is asserting a deprivation of his right to counsel. *See Custis v. United States*, 511 U.S. 485, 487 (1994). Petitioner's counsel raised the issues during sentencing and on direct appeal, and both the trial court and the Sixth Circuit appropriately denied Petitioner's contentions. (*See* Docs. 648, 681.) As a result, Petitioner's ineffective-assistance-of-counsel claims regarding counsel's failure to present these issues to the trial and appellate courts fail, and his § 2255 is denied to the extent it seeks relief based on such allegedly failures.

G.  **Qualifying Offenses**

Petitioner also contends his counsel was constitutionally ineffective for failing to argue to the appellate court that his career-offender designation was based upon non-qualifying offenses.

15

Petitioner contends that his prior Rutherford County conviction was not a controlled substances conviction. In determining whether a conviction is a controlled substance offense under § 4B1.2 of the Guidelines, the Sixth Circuit uses the "categorical approach" and courts look "only to the fact of conviction and the statutory definition—not the facts underlying the offense." *United States v. Douglas*, 563 F. App'x 371, 377 (6th Cir. 2014). The inquiry "is not whether the elements of the crime contain the same words as the Guidelines' definition—it is "whether the elements of the offense are of the type that would justify its inclusion within the definition of a controlled-substance offense." *Id*. (quoting *United States v. Woodruff*, 735 F.3d 445, 448 (6th Cir. 2013)).

Violations of Tennessee Code Annotated § 39-17-417 "have always [been] treated [as] a categorical controlled substances offense." *Id*.; *see United States v. Alexander*, 686 F. App'x 326, 327–28 (6th Cir. 2017) (same). Petitioner was convicted in 1989 and in 1995 of violations of Tennessee Code Annotated § 39-17-417 (*See* Doc. 630-2, at 1; Doc. 630-3, at 1.) Petitioner's 1983 conviction does not specify the statute of conviction and simply notes that Petitioner was convicted of "sale of cocaine." (Doc. 630-1.) Nonetheless, only two prior convictions are needed to trigger the career-offender Guidelines, and both Petitioner's 1989 and 1995 offenses qualify as controlled substance felonies. *See* U.S.S.G. § 4B1.1(b) ("the defendant has at least two prior felony convictions of a crime of violence or a controlled substance offense.") Consequently, Petitioner cannot show that his counsel's allegedly deficient performance prejudiced him, as at least two of his prior convictions did, indeed, qualify him for career-offender status. Consequently, Petitioner's motion is denied as to his contentions that his counsel was deficient for not objecting to the use of his previous state-court convictions.

16

## V. CONCLUSION

For the foregoing reasons, Petitioner's § 2255 (Doc. 765 in Case No. 4:13-cr-11; Doc. 1 in Case No. 4:18-cv-60) motion is **DENIED**.

**AN APPROPRIATE JUDGMENT SHALL ENTER.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**